## SUPREME COURT.

The People *ex rel.* The Pacific Mail Steamship Company agt. The Commissioners of Taxes and Assessments of the City and County of New York.

*Steamship company — steamships — at sea — where taxable.*

A steamship company, incorporated under the laws of this state, having their principal place of business in the city of New York,—as a corporation their *residence* is in New York.

Where their ships are registered at the port of New York under and pursuant to the United States registry act, the city of New York is their home port. They have and can have no other, and are *taxable here only.* Their *situs* is at the home port for all purposes of taxation, although they may be permanently engaged in commerce and business on the Pacific ocean.

This writ of *certiorari* is issued to bring before the court for review the action of the tax commissioners in correcting their assessment upon the capital stock of the relator.

*Coles Morris & Michael H. Cardozo,* counsel for relators.

*First.* The order of this court, under which the commissioners acted in this matter, directed them to deduct from the previous assessment against the relators the value of their personal property situated *out* of the state.

This gave the commissioners no power to determine that any portion of such personal property, which was *actually* situated out of the state, was *constructively* situated *within* the state, for the purposes of assessment and taxation. They set up, themselves, in their return to this writ, that their board had no power, *at that period* of time (January 8, 1874), to review any assessment for the year 1873, "except as

expressly ordered by competent authority." They were *functi officio*, as to all their original powers, in the premises, and could only act under the special directions contained in this order. Besides, this question was disposed of by the court that made the order. INGRAHAM, P. J., delivering the opinion of the court, which was concurred in by both of his associates, says: "The proof shows that the greater portion of the personal property of the company was permanently located without the state of New York; that the ships are used exclusively in the navigation of the Pacific ocean, and never touch at any port in this state. I am of the opinion that this property comes within the exemption of the statute " (*See Report of the case*, 1 *N. Y. Supreme C. R.*, 613).

The commissioners had a right of appeal from this order, if they had deemed it erroneous, but, when they undertook to act under it, they were bound to obey it literally.

*Second.* But if the commissioners *had* power to determine this question, then they erred in their decision, that such of the vessels described in schedule " D," annexed to the deposition of Mr. Bellows, as have their home port and are registered at the port of New York were to be deemed property of the relators *within* this state, for the purposes of assessment and taxation.

The proof shows that the place of business of the Pacific Mail Steamship Company, in this city, is intended and used only for the purpose of the general management of its affairs, the meetings of its stockholders and board of directors, and the keeping of its general accounts and records; and that the objects of the incorporation of the company require that the greater part of its operations shall be, and that they always have been, transacted at places and ports on the Pacific ocean.

These operations are conducted solely by means of the vessels in question, which were all sent from this port, or purchased on the Pacific coast, by the relators prior to November, 1872, *for permanent employment in their Pacific*

*trade,* and have remained there ever since, most of them having been employed since the year 1868.

All of these vessels which were sent to the Pacific ocean from this port are registered here.   The rest were purchased by the relators on the Pacific coast, and are registered there (*See Morgan* agt. *Parham,* 16 *Wallace R., p.* 471).

It has been settled by the court of appeals, in the case of `The People ex rel. Hoyt` agt. *Commissioners of Taxes, &c.* (23 *N. Y. R.,* 224), that, under this statute, property which is *visible and tangible,* so as to be capable of a *situs* away from its owner or his domicil, *must be actually within the state, or there is no right to tax it at all.*

And the principle of that case has since been extended even to such *intangibilities* as moneys invested by a resident of this state in loans in other states, upon securities taken and held in those states by his agents (*People ex rel. Jefferson* agt. *Gardner,* 51 *Barb. S. C. R., p.* 352.   *See also Catlin* agt. *Hall,* 21 *Verm. R.,* 152, *which was commented on and approved by the court of appeals, in Hoyt* agt. *Commrs. of Taxes, &c., ubi supra; see case of St. Louis* agt. *Wiggins Ferry Company,* 40 *Mo. R.,* 580).

It is no argument in support of the proposition contended for on behalf of the respondents, that unless these vessels are taxable here they are taxable nowhere.   They are not the only species of property similarly circumstanced.   Take, for instance, the case of capital belonging to a resident of this state, and invested in a mortgage on real estate in New Jersey, which is held by his agent in that state.   This, as we have seen (*People ex rel. Jefferson* agt. *Gardner, ubi supra*), is not taxable here, and, by the laws of New Jersey, it is not taxable there.

It follows, from the aforegoing considerations, that the relators are entitled to the deduction claimed of the aggregate value of all the vessels described in schedule D, annexed to the deposition of F. W. G. Bellows, which are registered at

Pacific Mail Steamship Co. agt. Com'rs of Taxes and Assessments.

the port of New York, and that the respondents erred in refusing to make such deduction.

*Third.* The commissioners also erred in their finding that the relators did not own the steamers described in schedule F, annexed to the deposition of F. W. G. Bellows, which were in process of construction out of this state, and in refusing to allow the relators the deduction claimed of the aggregate amount which they had paid on account of such steamers.

The proof on behalf of the relators shows that they were entitled to or interested in these steamers to the extent of the actual sums of money which had been paid by them on account of the same respectively, amounting in the aggregate to the sum of $1,972,260.

*Fourth.* It will, doubtless, be urged, on the part of the respondents, that the effect of granting the entire relief claimed by the relators may be to wipe out the whole of the assessment against them. That is no reason why such relief should not be granted. The respondents should have appealed from the order, the faithful execution of which, on their part, would lead to such a result, if they deemed it erroneous, or they should have accepted the option allowed them by said order, of confining their assessment to the amount of the personal property of the relators for which they admitted their liability to be taxed, and which is described in schedule C, annexed to the deposition of Mr. Bellows, and therein valued at $1,737,371.

*Fifth.* It should, therefore, be referred back to the respondents to correct the assessment which, in pursuance of said order, they made against the relators on the 8th day of January, 1874, and amounting to the sum of $4,067,065, by deducting therefrom, first, the aggregate value as shown in schedule D, annexed to the deposition of F. W. G. Bellows, of all the vessels described in said schedule, except those described in the resolution adopted at the meeting of the said respondents, on said last-mentioned day; and, second, the

sum of $1,972,260, being the aggregate amount of the payments made by the relators on the vessels described in schedule F of said deposition.

*Sixth.* This court acquired jurisdiction of this matter when the first writ of *certiorari* issued by it was served on the commissioners, on the 30th day of June, 1873 (*Laws of* 1859, *ch.* 302, § 20). This arrested the assessment rolls in the commissioners' hands and stayed all proceedings upon them. (*The People* agt. *Reddy,* 43 *Barb., p.* 545). The jurisdiction of the court continues to operate until its judgment upon said writ has been fully executed.

*E. Delafield Smith,* counsel to the corporation.

*James C. Carter,* counsel for respondents.

*First.* Ships, whose home is on the high seas, can have, of course, no *actual situs* within the territorry of any state. In order to determine what their *situs* is, for the purposes of assessment and taxation, resort must be had to other considerations.

Plainly, it is either in the state where the owner resides or in that in which the *home port,* that is, the port of registry, is situated. Both these circumstances, in the present case, point out the state of New York as the *situs* (*The People ex rel. Hoyt* agt. *The Commissioners of Taxes,* 23 *N. Y.,* 224; *The People ex rel. The U. S. and Brazil Steamship Company* agt. *The Commissioners,* 48 *Barb.,* 157).

*Second.* It is the law in this country that the title to a vessel which one is building for another remains in the builder until delivery, unless an agreement to the contrary be shown. Such contrary agreement was not shown (1 *Parsons on Maritime Law,* 74 *et seq., and notes; Merritt* agt. *Johnson,* 7 *Johns.,* 473; *Andrews* agt. *Durant,* 7 *Kern.,* 35).

*Third.* The commissioners had no *power* to reopen their decision and grant a rehearing.

They are statutory officers, and have such power only as the

statute gives them. Their *general* power to correct their own assessments, on the application of parties aggrieved, had, in this case, expired on the 30th day of June, 1873.

*Fourth.* But if the commissioners had the power to reopen their decision, the exercise of it was a matter resting in their discretion, which is not subject to review on a writ of *certiorari.* It is only where a party has been denied the benefit of a strictly *legal right* that he is entitled to relief.

DAVIS, *P. J.*—We think the proceedings of the commissioners should be affirmed, for the following reasons :

*First.* The relators are a corporation created by the laws of the state, and having their principal place of business in the city of New York. As a corporation their residence is in New York.

The ships included in the present assessment are registered at the port of New York, under and pursuant to the United States registry act, and the city of New York is their home port ; they have and can have no other, and are not taxable elsewhere. Their *situs* is at the home port for all the purposes of taxation. In the case of *Morgan* agt. *Parham,* the supreme court of the United States have very emphatically settled these questions, and reaffirmed the case of *Hays* agt. *The Pacific Mail Steamship Company,* under which the relators escaped taxation on these or similar vessels in California (*See Morgan* agt. *Parham,* 16 *Wallace,* 471 ; *Hays* agt. *The Pacific Mail Steamship Company,* 17 *Howard,* 596).

But it is insisted that, under our statute, the property of the relators, to be taxable, must be physically *within* the territory of the state ; and, therefore, it is not enough that its legal *situs* and ownership are here. We think this position not sound, for several reasons. Of course, ships at sea are not, in a strict sense, within the territory of the state in which they have their home port, but in legal contemplation they are themselves part of the territory (so to speak) of the

country of which their owners are citizens or subjects; and they retain all the rights that flow from that fact while engaged in commerce between foreign ports, for undefined periods, without any interval of return to the home port.

But it is not, perhaps, upon this ground that they are deemed within this state, when owned by citizens of the state, for the purposes of taxation. It is rather because of the peculiar character of the property, which, though it be used abroad in the business of the owner, does not blend with the business and commerce of any foreign state or territory. The business of the relators' ships in the Pacific is all the while a part of the business carried on in New York, under which the charter of the company, whence the general management and direction emanate, and to which point returns of all results are made. The ownership and nature of the business control to establish the home port where the corporation resides as the *situs* of the ships themselves, and in legal contemplation we think the vessels used in the business, which have their home port under the law at New York, are within the jurisdiction and territory of the state within the meaning of the general statute declaring what property is taxable.

But for the decisions of the court when this case was before under consideration, we should deem this an immaterial question.

The relators, under the statute of 1857 (*Laws of* 1857, *chap.* 456), are taxable only upon their *capital stock,* which is to be assessed at its actual value, with certain exceptions specifically named or referred to in the act.

The subject of taxation under this act is the capital stock of the company, and that is at all times *within the state,* although, for the purpose of conducting the business of the company, a portion of its capital may be invested in ships whose commerce is carried on in remote parts of the world. The question to which the commissioners were to look, under the law, was not the *locus* or *situs* of items of property

owned by the corporation, but of the company itself, and of its capital stock, and they are in New York, both in law and in fact.

It would require a *special exemption* by statute to authorize the commissioners, in determining the actual value of the capital stock of the company, to strike out the value of property used in the general business of the company and contributory to the actual value of the capital stock, because its use was outside the state and the articles of property were therefore not territorially *within* the state. We think nothing of that kind was in contemplation under the act of 1857, which intended to create a special system of taxation applicable to corporations, and, *sub modo*, to modify all previous general laws; but this is not, perhaps, an open question.

In respect to the money invested in building the ships in Delaware, nothing was shown before the determination of the commissioners to require them to treat the ships in process of building as the property of the company. Before the motion for rehearing, the commissioners had made and filed with the comptroller their certificate.

The application for rehearing came too late; but, if it did not, the refusal to rehear is not a subject of review on this application.

The proceedings should be affirmed.

DANIELS and WESTBROOK, JJ., concurred.